UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| T.D., | Case No. 3:22-cv-09046-LB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KILOLO KIJAKAZI, | |
| Defendant. | Re: ECF Nos. 16, 18 |

## INTRODUCTION

The plaintiff seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for social-security disability insurance benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the Commissioner's cross-motion and denies the plaintiff's motion.

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 16; Cross-Mot. – ECF No. 18; Reply – ECF No. 19.

United States District Court
Northern District of California

**STATEMENT**

**1. Procedural History**

The plaintiff applied for social-security disability insurance benefits on October 16, 2020. The Commissioner denied her claim on January 5, 2021, and again on March 11, 2021. On April 14, 2021, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ). On November 3, 2021, the ALJ held a hearing and heard testimony from a vocational expert (VE) and the plaintiff.[3] The ALJ issued an unfavorable decision on November 19, 2021.[4] On October 27, 2022, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[5] The plaintiff filed this action on December 21, 2022, and the parties each moved for summary judgment.[6] All parties consented to magistrate-judge jurisdiction.[7]

**2. Medical Records**

The plaintiff contended that she was disabled because of the following conditions: lupus, fibromyalgia, and Raynaud Syndrome.[8] Records from the following individuals were submitted at the administrative hearing: (1) Alan Seif, D.O., a treating physician;[9] (2) Michael Wakim, M.D., a treating physician;[10] (3) Vincenzo Vitto, D.O., a treating physician;[11] (4) Michael Chu, D.O., a treating physician ;[12] (5) Chetachi Okereke, M.D., a treating physician;[13] (6) L. Huynh, M.D., a

---

[3] AR 15. Administrative Record (AR) citations refer to the page numbers in the bottom-right hand corner of the AR.

[4] AR 15–22.

[5] AR 1–6.

[6] Compl. – ECF No. 1; Mot. – ECF No. 16; Cross-Mot. – ECF No. 18.

[7] Consents – ECF Nos. 8, 12.

[8] AR 98.

[9] AR 436–38.

[10] AR 634–38.

[11] AR 1083, 1122, 1125, 1129–34, 1155, 1162–63, 1169–70.

[12] AR 1138–39, 1148–49, 1179–81.

[13] AR 1194–96, 1135–37, 1158–59.

United States District Court
Northern District of California

state agency medical consultant;[14] and (7) J. Rule, M.D., a state agency medical consultant.[15] Because the plaintiff challenges the ALJ's consideration of the medical records, this order summarizes the disputed opinions (those of Drs. Vitto and Chu) fully.

### 2.1. Vincenzo Vitto, D.O. - Treating Physician

Dr. Vitto was one of the plaintiff's primary-care providers and saw the plaintiff multiple times between June and September of 2021.

On March 5, 2021, Dr. Vitto provided the plaintiff with a work-status report indicating that the plaintiff was placed off work from November 11, 2020 to April 4, 2021.[16]

On April 29, 2021, Dr. Vitto followed up with the plaintiff through a phone call. Dr. Vitto recorded that the plaintiff had mid- and lower-back pain and that the plaintiff did not believe that physical therapy was helping. Evaluating an MRI, Dr. Vitto recorded "T-spine minimal changes noted mostly disc degeneration."[17] On the same day, Dr. Vitto issued another work-status report indicating that the plaintiff was placed off work from May 3, 2021 to May 30, 2021.[18]

On May 27, 2021, Dr. Vitto responded to an email by the plaintiff that indicated her back pain had not abated, by providing another work-status report. This report indicated that the plaintiff was placed off work from May 30, 2021 to June 27, 2021. The record also shows an email exchange between Dr. Vitto and the plaintiff. In the exchange, the plaintiff requests additional medical treatment to relieve her back pain.[19]

Dr. Vitto issued another work-status report on July 26, 2021 placing the plaintiff off work from July 26, 2021 to August 29, 2021.[20] On August 10, 2021, Dr. Vitto spoke with the plaintiff over the phone and recorded that her mid- and lower-back pain had abated as a result of treatment

---

[14] AR 82–95.

[15] AR 97–110.

[16] AR 1083.

[17] AR 1122.

[18] AR 1125.

[19] AR 1129–34.

[20] AR 1155.

United States District Court
Northern District of California

but that her upper back pain had worsened. He also noted that the plaintiff reported numbness in her arms and legs.[21]

On August 30, 2021, Dr. Vitto issued another work-status report placing the plaintiff off work from August 30, 2021 through September 30, 2021.[22]

### 2.2. Michael Chu, D.O. - Treating Physician

Dr. Chu was also one of the plaintiff's primary care providers and saw the plaintiff multiple times between March and August of 2021.

On June 29, 2021, Dr. Chu issued a work-status report placing the plaintiff off work from June 28, 2021 to July 5, 2021.[23] On July 12, 2021, Dr. Chu issued a work-status report placing the plaintiff off work from July 12, 2021 to July 26, 2021.[24] On September 10, 2021, Dr. Chu conducted a medical procedure to relieve the plaintiff's back pain.[25]

## 3.   Administrative Proceedings

### 3.1. Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application[26] and one at the reconsideration level.[27]

At the initial level, the state doctor found the following impairments to be severe: (1) Fibromyalgia, and (2) Systemic Lupus Erythematosus.[28] The doctor found the plaintiff to be not disabled despite these impairments.[29]

---

[21] AR 1162–63.

[22] AR 1169–70.

[23] AR 1138–39.

[24] AR 1148–49.

[25] AR 1179–81.

[26] AR 82–95.

[27] AR 97–110.

[28] AR 88.

[29] AR 94.

United States District Court
Northern District of California

On reconsideration, the doctor concluded that the same two medical issues were severe.[30] They again found the plaintiff to be not disabled.[31]

### 3.2. Administrative Hearing

The ALJ held a hearing on November 3, 2021. It was conducted telephonically due to the COVID-19 pandemic.[32] The plaintiff and VE Kenneth Jones testified.[33]

#### 3.2.1. Plaintiff's Testimony

The ALJ and the plaintiff's attorney questioned the plaintiff.[34] The plaintiff testified that she completed high school and two years of college, though she did not receive a college degree.[35] She last worked at Thurman Inc. in 2020. While there, she conducted data entry of invoices, copied and filed documents, sent out company mail, and answered the phone.[36] She reported that she stopped working because her lupus was flaring up, which has continued to this day.[37] She described a lupus flare as "affect[ing] [her] muscle system, as far as [her] ankles," sometimes causing dizziness, or headaches, as well as leaving "bumps" on her skin.[38] She also reported that she suffered from "Raynaud's" and numbness of various body parts.[39] She stated that because of Raynaud's, her fingers get "really cold," "turn blue," and become susceptible to blistering. She stated that this hampers her ability to do things like type on a keyboard or open jars.[40] She also stated that the numbness and aches she experiences throughout her body make it difficult for her to

---

[30] AR 103.

[31] AR 109.

[32] AR 15.

[33] AR 29–81.

[34] AR 37–60.

[35] AR 38.

[36] AR 38–39.

[37] AR 40.

[38] AR 51.

[39] AR 42.

[40] AR 52.

lift anything that weighs more than three to five pounds[41] or to sit[42] or stand[43] for significant periods of time without a break. The plaintiff also suffered from an as-yet-undiagnosed lung issue for which she was on medication.[44]

The plaintiff testified to having done several jobs prior to her previous place of employment. She had worked as an administrative or buying assistant,[45] tradeshow organizer,[46] cashiering and stocker,[47] and as a food prepper and packager.[48] She reported leaving one recent job because of the strain that continuous standing put on her body.[49] She also reported leaving another recent job, which she held for five and a half years, in part because of the symptoms associated with her lupus.[50]

The plaintiff also described how she conducts her household chores in light of her illness. She receives continuous assistance from her daughter, who does her laundry, cleans her home, and takes out her garbage. The plaintiff orders her groceries online and has them delivered at her home rather than going to the store herself.[51]

### 3.2.2. VE's Testimony

VE Kenneth Jones also testified at the November 3, 2020 hearing.[52] The ALJ asked the VE to classify the plaintiff's prior work according to the Dictionary of Occupational Titles. The VE classified the plaintiff's past seven jobs as follows: (1) the VE classified jobs one and seven as "administrative clerk," with an SVP of 4 and light exertion; (2) the plaintiff's role at Mission

---

[41] AR 53.

[42] AR 54.

[43] AR 56.

[44] *Id.*

[45] AR 39, 48–51.

[46] AR 45.

[47] AR 43.

[48] AR 43, 46–47.

[49] AR 44.

[50] AR 46.

[51] AR 55.

[52] AR 61.

Foods as "hand packager," with an SVP of 2 and medium exertion; (3) the plaintiff's role at Target as "sales clerk," with an SVP of 3 and light exertion;[53] (4) the plaintiff's role at P.F. Chang's as "cook helper, pastry," with an SVP of 3 and medium exertion;[54] (5) the plaintiff's role at Volt and R&D Technical Services as a "purchasing clerk," with an SVP of 4 and half exertion; (6) the plaintiff's role at Ran Traun as "buyer assistant," with an SVP of 6 and light exertion;[55] and (7) the plaintiff's final role as a "display representative," with an SVP of 5 and light exertion.[56]

The ALJ posed the first hypothetical to the VE: a person of the claimant's age, education, and work experience who "could perform work in the light exertional level, but no climbing of ropes, ladders, or scaffolds; occasional climbing on ramps and stairs; occasional stooping, kneeling crouching, or crawling. The person should avoid concentrated exposure to temperature extremes and pulmonary irritants such as odor, dust, and workspace with poor ventilation and should avoid concentrated exposure to vibration and work hazards, such as unprotected height and being around dangerous moving machinery." The VE testified that the hypothetical person could not perform the plaintiff's past work as a hand packager or cook helper, pastry, but that she could still work as (1) an "administrative law clerk," (2) "the exhibit display [representative]", (3) a "purchasing agent," and (4) a "buyer['s] assistant."[57]

The plaintiff's attorney posed a second hypothetical to the VE. In addition to the conditions of the previous hypothetical, the person is "off task over 15% of the workday due to either the cognitive side effects of medications or concentration, [or] limitations imposed by pain." The VE responded that the hypothetical person could perform none of the plaintiff's past jobs because employers "like to stick to an off-task rate of 10%."[58]

---

[53] AR 63.

[54] AR 63–64.

[55] AR 64.

[56] AR 65.

[57] AR 67–68.

[58] AR 69.

United States District Court
Northern District of California

The plaintiff's attorney then posed a third hypothetical to the VE. In addition to the conditions of the first hypothetical, "reduce the [hypothetical person's] RFC to sedentary and then . . . reduce the bilateral gripping, grasping, handling, fingering to occasional." The VE testified that no jobs with transferable skills are available to such a person.[59]

**4.3 ALJ Findings**

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that she was not.[60]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability-onset date of June 25, 2020.[61]

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) fibromyalgia; (2) systemic lupus erythematosus; and (3) interstitial lung disease.[62]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[63]

Before reaching step four, the ALJ determined that the plaintiff had residual functional capacity (RFC) "to perform light work," with the caveat that the plaintiff cannot "climb ropes, ladders or scaffolds" and can only occasionally "climb ramps or stairs, stoops, kneel crouch or crawl." The ALJ further determined that the plaintiff "should avoid concentrated exposure to temperature extremes and pulmonary irritants such as gas, fumes, odors, dust and workspace with poor ventilation." Finally, the ALJ added that the plaintiff should "avoid concentrated exposure to vibration and work hazards such as unprotected heights and being around dangerous moving machinery."[64]

---

[59] AR 70.

[60] AR 15–22.

[61] AR 17.

[62] *Id.*

[63] AR 18.

[64] AR 18–19.

United States District Court
Northern District of California

1  At step four, the ALJ found that the plaintiff is capable of "performing past relevant work as

2  an administrative clerk, . . . a purchasing agent, . . . and an exhibit display representative."[65]

3  The ALJ's finding at step four necessitated a finding that the plaintiff was not disabled.[66]

4

5  ## STANDARD OF REVIEW

6  Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

7  Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set

8  aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or

9  are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

10  586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence is such relevant

11  evidence as a reasonable mind might accept as adequate to support a conclusion, and must be

12  more than a mere scintilla, but may be less than a preponderance." *Kitchen v. Kijakazi*, 82 F.4th

13  732, 738 (9th Cir. 2023) (cleaned up). The reviewing court should uphold "such inferences and

14  conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*,

15  348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's

16  decision and a different outcome, the court must defer to the ALJ's decision and may not

17  substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a

18  court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v.

19  Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

20

21  ## GOVERNING LAW

22  A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

23  mental impairment which can be expected to result in death or which has lasted or can be expected

24  to last for a continuous period of not less than twelve months," and (2) the "impairment or

25  impairments are of such severity that he is not only unable to do his previous work but cannot,

26

27  _____

[65] AR 22.

28  [66] *Id.*

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs*., 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) determining that the plaintiff's Raynaud's Syndrome was not severe, (2) failing to adequately evaluate the plaintiff's lupus under the criteria

of Listing of Impairments, (3) improperly considering the assessment of treating physicians, and (4) inadequately considering the side-effects of medication in the RFC assessment.[67]

### 1. Whether the ALJ Erred in Determining that the Plaintiff's Raynaud's Syndrome was Not Severe.

The plaintiff argues that the ALJ erred by failing to classify the plaintiff's Raynaud's Syndrome as severe.[68]

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must consider the record as a whole, including evidence that both supports and detracts from his final decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). An impairment is not severe if it does not significantly limit the claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* § 404.1522(b).

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id*. (internal quotation marks omitted) (first citing SSR 85-28; then citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

Here, the ALJ sufficiently established that the plaintiff's Raynaud's Syndrome has only a minimal effect on her ability to work. For example, substantial evidence shows that the condition is well-managed with treatment and that objective testing confirmed this (for example, the plaintiff had full grip and motor strength). The court thus denies remand on this ground.

---

[67] Mot – ECF No. 16.

[68] *Id.* at 5–7.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2. Whether the ALJ Erred in Concluding that the Plaintiff's Lupus Does not Meet or Equal a Listed Impairment

Regarding step three, the plaintiff contends that the ALJ both came to an incorrect conclusion based on the record and that the ALJ's discussion of the plaintiff's lupus was "not sufficient to show that the ALJ considered [all the evidence]."[69] The Commissioner responds that the ALJ correctly found that the plaintiff's lupus does not meet listing 14.02, including because the plaintiff did not satisfy the durational requirement of at least twelve consecutive months.[70]

At step three of the five-step framework, "[i]f a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is presumed disabled[.]" *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2000) (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). "Medical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Marcia*, 900 F.2d at 175–76 (quoting 20 C.F.R. § 404.1526). Accordingly, at step three, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" to determine whether a claimant equals a Listing. *Id.* at 176.

The ALJ found that the plaintiff's Systemic Lupus Erythematosus did not meet the criteria of Listing 14.02 because "[t]he claimant's doctor repeatedly note[d] that the claimant's lupus was stable and not at issue." The ALJ also noted that "no State agency consultant concluded that a listing is met or medically equaled."[71] In support of the first proposition, the Commissioner cites five documents throughout the administrative record (AR 18, 330, 582, 648, 1158).[72] Of these, AR 582 ("currently no symptoms of active SLE" in November of 2020), AR 648 ("[SLE] appears stable" in November of 2020), and AR 1158 ("[SLE] stable" in July of 2021) relate to the time

---

[69] Mot. – ECF No. 16 at 7–9.

[70] Cross-Mot. – ECF No. 18 at 11–12.

[71] AR 18.

[72] Cross-Mot. – ECF No. 18 at 9–10.

1    period in question, June 25, 2020 through March 15, 2023.[73] The ALJ's decision is also supported

2    by testimony from agency consultants. The court defers to the ALJ's decision when different

3    outcomes are supported by evidence, as is the case here. *Tackett*, 180 F.3d at 1097–98. The court

4    denies remand on this ground.

6        **3.   Whether the ALJ Erred in Considering the Medical Evidence**

7        The plaintiff contends that the ALJ erred in considering the medical evidence by not properly

8    explaining her rejection of Drs. Vitto and Chu's statements placing the plaintiff out of work for an

9    eleven-month period. But ultimate conclusions about ability to work are for the Commissioner to

10   make. *McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011) ("As for the ALJ rejecting Dr.

11   Rossetto's opinion on whether McLeod could work at any job, he was correct that this

12   determination is for the Social Security Administration to make, not a physician."); 20 C.F.R.

13   § 404.1520b(c). The court denies remand on this ground.

15       **4.   Whether the ALJ Failed to Adequately Consider the Side-Effects of Medication in the**
16            **Residual Functional Capacity Assessment**

17       Finally, the plaintiff contends that the ALJ failed to consider the side effects of the plaintiff's

18   medications in the RFC assessment. The plaintiff points to her testimony about unspecified

19   medications and medical records concerning her Amitriptyline and Prozac.[74] But as the

20   Commissioner points out, the side effects of Amitriptyline and Prozac were temporary.[75] This

21   included discontinuing Prozac; records from November 2020 and March 2021 stated that the

22   plaintiff was not taking the medication even though it had been prescribed.[76] Overall, the ALJ's

23   RFC assessment was supported by substantial evidence, so the court denies remand. *Roquemore v.*

24   *Comm'r of Soc. Sec. Admin.*, 374 Fed. App'x 693, 695 (9th Cir. 2010) (an ALJ is not required to

---

[73] AR 15–22.

[74] Mot – ECF No. 16 at 11.

[75] Cross-Mot. – ECF No. 18 at 15–16.

[76] AR 580, 1093.

include side effects in an RFC analysis if the claimant's "subjective claims" are not corroborated by the record).

### CONCLUSION

The court denies the plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

This resolves ECF Nos. 16 and 18.

**IT IS SO ORDERED.**

Dated: March 31, 2024

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California